**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CV-61533-GAYLES/STRAUSS**

**ELVIS ACOSTA,**

     Plaintiff,

v.

**ALEJANDRO MAYORKAS**, Secretary,
United States Department of Homeland
Security, Federal Air Marshal Service,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Motion"). [DE 31]. This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 28]. I have reviewed the Motion, the Response [DE 35] thereto, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED-IN-PART and DENIED-IN-PART**.

## BACKGROUND[1]

Plaintiff, Elvis Acosta ("Acosta"), was a Federal Air Marshal ("FAM") with the Federal Air Marshal Service of the Department of Homeland Security ("Defendant") until October 2019. [DE 27] ¶ 1. Prior to becoming a FAM, Acosta served in the U.S. Armed Forces and retired as a

---

[1] For purposes of considering the Motion, the Court accepts the factual allegations in the Amended Complaint as true and views them in the light most favorable to Plaintiff. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019).

Colonel.  *Id.* ¶ 8.  Acosta has a 100% disability rating from the United States Department of Veterans Affairs.  *Id.* ¶ 9.

In 2011, Acosta participated in a Merit Systems Protection Board ("MSPB") case and was a non-hostile witness for FAM Robert MacLean's MSPB case in 2019.  *Id.* ¶ 13.  From 2012–2019, Defendant issued sixteen Issue Tracking Reports ("ITRs")[2] against Acosta.  *Id.* ¶ 14.  Before participating in his MSPB case in 2011, Acosta was an exemplary employee.  *Id.* ¶ 15.

While performing mandatory training with Defendant, Acosta sustained a traumatic injury sometime between May 23, 2018, and June 18, 2018.  *Id.* ¶ 10.  In February 2019, Acosta's physician prescribed him CBD oil as part of his treatment for his service-related traumatic injury.  *Id.* ¶ 11.  The CBD oil prescribed to Acosta "met all of the requirements set forth by the Agriculture Improvement Act of 2018, PL 115-334, for THC levels in CBD products."  *Id.* ¶ 12.

Based on further acts alleged in various counts, Acosta's initial Complaint alleged a violation of the Whistle Blower Protection Act, hostile work environment, hostile work environment retaliation, American with Disabilities Act retaliation, and disparate treatment.  *See* [DE 1].  After Defendant filed a motion to dismiss, [DE 13], the District Judge entered an order granting the motion because Acosta's claims were based "on vague and conclusory allegations that lack any specificity," [DE 26].  That order identified a non-exhaustive list of deficiencies in Plaintiff's allegations:

> For example, Plaintiff fails to allege any details about his protected activity including the nature of his participation in the Merit Systems Protection Board cases or when, how, or by whom he was discriminated against.  Similarly, Plaintiff provides no detail about the biased comments or harassment that purportedly make up his hostile work environment claims, including who made the statements, the content of the statements, and how long he was subjected to harassment.  Plaintiff fails to allege any basis for vicarious liability.  Moreover, Plaintiff provides no

---

[2] Acosta's Amended Complaint uses the term "ITR" without defining what "ITR" stands for.  The Motion clarifies that the term stands for "Issue Tracking Reports," [DE 31] at 7, and the Response does not dispute its definition.

details about his alleged disability or the comparator for his disparate treatment claim.

*Id.* Acosta then filed the present Amended Complaint containing several causes of action which he labels: (1) Retaliation; (2) Hostile Work Environment; (3) Retaliatory Hostile Work Environment; (4) American with Disabilities Act Retaliatory Claim; and (5) Disparate Treatment. [DE 27]. Defendant again moves to dismiss Acosta's Amended Complaint. [DE 31].[3]

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads

---

[3] Within Defendant's Motion, Defendant states that Acosta's Amended Complaint "must be dismissed with prejudice for failure to establish subject matter jurisdiction of the court and for failure to state a claim." [DE 31] at 4–5. Defendant then dedicates a portion of its "Legal Standards" section to Federal Rule of Civil Procedure 12(b)(1) and the differences between a facial vs. a factual attack on subject matter jurisdiction. *Id.* at 5–6. However, at no point within its analysis does Defendant challenge this Court's subject matter jurisdiction. Based on the fact that Defendant dedicates approximately two pages of its "Background and Procedural History" to facts outside the Amended Complaint "[r]egarding [Plaintiff's] administrative exhaustion efforts," *id.* at 2–4, it is possible that Defendant intended to assert that Plaintiff did not sufficiently exhaust his administrative remedies and that the Court consequently lacks subject matter jurisdiction. However, Defendant provided no citations to authority for that argument and did not analyze how or why such authority would apply to Plaintiff's administrative exhaustion efforts. While I am mindful of the Court's obligation to assure itself that it has subject matter jurisdiction, because there is no facial defect in Plaintiff's allegations regarding subject matter jurisdiction, and because Defendant has failed to adequately raise and analyze the issue, I decline to further address the matter of subject matter jurisdiction here. Rather, I only evaluate Defendant's Motion through the lens of Rule 12(b)(6). If Defendant believes there is a genuine issue regarding the Court's subject matter jurisdiction, it is permitted to raise that issue (with full analysis) at any time.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## <u>ANALYSIS</u>

Defendant's Motion directs specific arguments for dismissal at each individual count of the Amended Complaint. However, as an initial matter, I note that Plaintiff has failed to address several of the shortcomings that the District Judge specifically identified in the order dismissing Plaintiff's original complaint, while minimally addressing several others. For example, Plaintiff's Amended Complaint still "provides no details about his alleged disability." He still "fails to allege

any details about his protected activity" beyond vaguely stating that he "participated" in a case regarding his removal in 2011 and "was called as a non-hostile witness for Robert MacLean" in 2019 (allegations that are indistinguishable from the descriptions the Court previously found lacking).  In apparent response to the Court's finding that "Plaintiff provides no detail about the biased comments or harassment that purportedly make up his hostile work environment claims, including who made the statements, the content of the statements, and how long he was subjected to harassment," Plaintiff provides some vague description of the topic of statements that he labels "derogatory," alleging that they were about Plaintiff's use of a disabled parking permit to park in a disabled parking spot and about using "taxpayer money" to allow Plaintiff to work with (some unspecified) "reasonable accommodation."  Yet, the Amended Complaint still lacks detail about what exactly was said, when it was said (except for providing a year), and how frequently.  Finally, Plaintiff still provides only the barest of information about the alleged comparator for his disparate treatment claim.  In fact, the only additional information about the comparator beyond what Plaintiff alleged in his initial complaint appears to be the comparator's last name (Valdes).  In short, as more fully analyzed as to each count below, Plaintiff's allegations almost universally miss the mark of sufficiently alleging plausible claims.

### A.  Count I: Retaliation

Acosta has not sufficiently pled a Title VII retaliation claim.  Under Title VII, "all personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a). This prohibition against "any discrimination" also bars retaliation for complaints of discrimination. *See Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1203 (11th Cir. 2021) (citing *Porter v. Adams*, 639 F.2d 273, 277–78 (5th Cir. 1981)); *Canino v. U.S. E.E.O.C.*, 707 F.2d 468, 472 (11th

Cir. 1983).  Defendant argues that Acosta has failed to sufficiently allege a *prima facie* case of retaliation under the *McDonnel Douglas*[4] burden-shifting framework.  "A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  Specifically, Defendant argues that Acosta has failed to show a causal connection between his protected activity[5] and the adverse employment action.

A plaintiff need not satisfy the *McDonell Douglas* framework at the pleading stage to state a retaliation claim.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002); *Jenkins v. Miami Dade County*, No. 22-CV-23910, 2023 WL 5455396, at *4 (S.D. Fla. Aug. 24, 2023).  As the Eleventh Circuit has stated, "*McDonnell Douglas's* burden-shifting framework is an evidentiary standard, not a pleading requirement."  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015).  Nevertheless, although Acosta does not need to satisfy the *McDonell Douglas* framework, "the ordinary rules for assessing the sufficiency of a complaint [still] apply." *Swierkiewicz*, 534 U.S. at 511.  In other words, Acosta still "must provide enough factual matter (taken as true) to suggest intentional . . . discrimination."  *Glover v. Donahoe*, 626 F. App'x 926, 930 (11th Cir. 2015) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)).  That means, as relevant here, that Acosta must "plead sufficient facts from which one could infer plausibly that a causal connection existed between [Acosta's] statutorily-protected

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[5] Defendant does not contest that Acosta's participation in a MSPB case is a protected activity or that retaliation against Acosta for participating in a MSPB case could form the basis of a retaliation claim under Title VII.

activity and Defendant['s] alleged retaliatory conduct." *Id*. at 931.  "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).  A plaintiff can show a causal connection through "close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  "But mere temporal proximity, without more, must be 'very close.'" *Id*. (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Here, Acosta alleges that in 2011 he participated in an MSPB case after Defendant removed him from his position.  [DE 27] ¶ 17.  After the conclusion of that MSPB case, the MSPB reinstated Acosta to his position.  *Id*. ¶ 18.  Prior to his participation in that case, Acosta was an exemplary employee.  *Id*. ¶ 30.  Between 2012 and 2019, Defendant issued Acosta sixteen "ITRs" between 2012–2019 "in an attempt to have him removed from his position."  *Id*. ¶ 22.

Acosta alleges that, after he suffered an injury at work in 2018, RMO[6] Ribar falsified Acosta's CA-1 form to make it appear that Acosta was injured while not at work, resulting in a dispute over Acosta's worker's compensation benefits and a loss of a portion of his pay.  *Id*. ¶¶ 23–25.  In early 2019, Acosta was called as a non-hostile witness before the MSPB for Robert MacLean.  *Id*. ¶ 20.  FAMS members made derogatory comments about FAM Acosta after his testimony.  *Id*. ¶ 21.  Then, in July 2019, Defendant indefinitely suspended Acosta, without pay, pending an investigation for using CBD oil, while another FAM, Valdes, who ate marijuana-laced brownies, was not suspended.  *Id*. ¶ 26.  While the investigation was pending, Defendant removed

---

[6] The Amended Complaint does not define "RMO," though elsewhere it refers to RMO Ribar as a "FAMS officer."  *See* [DE 31] ¶ 76.  The Amended Complaint does not explain what supervisory authority (if any) Ribar had over Acosta.

Acosta from federal service and terminated his security clearance. *Id.* ¶ 27. Instead of reinstating Acosta pending his disability retirement after the investigation cleared him of any wrongdoing, Defendant left Acosta on indefinite leave without pay until Acosta received his full disability retirement. *Id.* ¶ 28.

Even taking Acosta's factual allegations as true and in the light most favorable to him, Acosta fails to sufficiently allege facts from which the Court could infer a causal connection between his protected activity and the adverse employment actions against him. Acosta alleges two instances of protected activity: participating in his own MSPB case in 2011 and testifying as a "non-hostile witness" in Robert MacLean's MSPB case sometime in "early 2019."[7] After his 2011 reinstatement following his MSPB case, Acosta did not even arguably suffer an adverse employment action until at a minimum 2012 when he received an ITR. [DE 27] ¶¶ 17–18, 22. Acosta alleges Defendant issued him sixteen ITRs over the span of eight years. But Acosta alleges no facts from which the Court can plausibly infer that these ITRs were connected to his MSPB case or motivated by a desire to retaliate against him for bringing an MSPB case. Notably, the Amended Complaint does not define what "ITRs" are or provide any detail about their purpose, how they are issued, or what impact (if any) they even theoretically have on an employee like Acosta. Nor does Acosta state how many ITRs were issued in each year, identify who issued them, discuss any of their substance, or describe any actual adverse effects he suffered from them. In fact, Acosta admits that "[m]ost of the [sixteen] ITRs were 'No Action Taken' results." *Id.* ¶ 22. In other words, there are no facts to support Acosta's allegation that the ITRs were issued "in an

---

[7] Defendant does not address Acosta's 2019 testimony in MacLean's MSPB case, other than asserting that "there is no record of him ever appearing" in those proceedings. [DE 31] at 7 n.3. Plaintiff's response is clearly correct that the Court must take Plaintiff's allegations about his participation in MacLean's case as true and consider whether Plaintiff has plausibly alleged that Defendant retaliated against him because of that participation.

attempt to have him removed from his position" (a conclusory allegation that the Court need not accept as true).

Lacking other facts to connect the ITRs to his 2011 MSPB case, Acosta apparently relies on temporal proximity. However, as noted above, "mere temporal proximity, without more, must be 'very close.'" *See Thomas*, 506 F.3d at 1364. Indeed "a three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id*; *see also Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) ("If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law."); *Wascura v. City of South Miami*, 257 F.3d 1238, 1245 (11th Cir. 2001) ("[A] three and one-half month period between [plaintiff's] notification to the Commissioners of her son's illness and her subsequent termination does not, standing alone, show that the City's articulated reasons for her termination were pretextual."). Here, with the first ITR coming seemingly a year after Acosta's 2011 re-instatement (with the subsequent ITRs even more attenuated), there is insufficient temporal proximity to create a plausible claim. For the same reason, RMO Ribar's falsification of Acosta's CA-1 form in 2018[8] and Acosta's ultimate suspension and removal from federal service in 2019 were far too removed from the 2011 MSPB case to be plausibly connected to that protected activity.

Acosta also has not sufficiently alleged facts from which the Court can infer that his suspension and subsequent removal from federal service was the result of his participation in Robert MacLean's MSPB case, in which Acosta alleges he was called as "non-hostile" witness "early 2019." [DE 27] ¶ 20. The only facts potentially connecting Acosta's firing with this testimony are the timing and the allegation that "FAMS members made derogatory comments

---

[8] Obviously, RMO Ribar's actions in 2018 pre-dated Acosta's 2019 participation in MacLean's MSPB case and thus could not possibly have been in retaliation for that protected activity.

about FAM Acosta after his testimony." *Id.* ¶ 21.  As to the "derogatory comments" allegation, Acosta provides far too few details to infer that these comments illustrate a retaliatory motive or have any connection to either his testimony or his suspension and termination.  For example, Acosta does not allege anything about the content of these comments (other than using the vague and conclusory term "derogatory") or otherwise suggest they have anything to do with his MSPB testimony other than that they vaguely occurred "after" his testimony.  Furthermore, he does not allege who made these comments or what their positions were, preventing the Court from inferring that those who made the comments were in any position to affect Acosta's status with FAMS or reflected FAMS' attitude towards Acosta.  As to temporal proximity, Defendant did not suspend Acosta until July 2019, several months after his participation in "early" 2019.  Accordingly, Acosta's retaliation claim should be dismissed.

### B.  Count II: Hostile Work Environment

Acosta has not sufficiently pled a hostile work environment claim.  To establish a hostile work environment claim, a plaintiff must plausibly allege facts that show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *see also Brannon v. Sec'y, Dep't. of Veterans Affs.*, No. 22-10838, 2023 WL 1161129, *5 (11th Cir. Jan. 31, 2023) (citing *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014), and applying the same elements in the motion to dismiss context).

To satisfy the fourth element, a plaintiff needs to allege that the work environment was both subjectively and objectively hostile. *Adams*, 754 F.3d at 1248. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Several factors to consider when evaluating "all the circumstances" are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Here, Acosta alleges he belongs to a protected group as a disabled person. [DE 27] ¶36. Acosta then alleges that he was harassed "due to his membership in the protected class" when he was "suspended without pay," when RMO Ribar made "biased comments" about his disability status, and when he was not given reasonable accommodations for his disability. *Id.* ¶ 40.[9] Notably, the Amended Complaint provides no further information identifying any reasonable accommodation Acosta sought, when he sought it, or when or how it was rejected (nor, as noted above, any information as to what Acosta's disability is). Regarding the "derogatory comments," Acosta further alleges "in or about 2018," RMO Ribar made "derogatory comments" towards him when Acosta used his disabled parking permit to park in a disabled parking spot and made "derogatory comments" to Acosta about using "taxpayer money" to allow Acosta "to work with reasonable accommodations instead of working without a reasonable accommodation." *Id.* ¶¶ 41–

---

[9] Within Count II, Acosta alleges that in July 2019 he "was discriminated against for his protected actions when he was indefinitely suspended pending investigation for using CBD oil for permanent injury suffered on the job" and "was discriminated against for his protected acts when he was removed from [f]ederal [s]ervice." *Id.* ¶¶ 37–38. It is unclear to what "protected actions" or "protected acts" these allegations refer or how they relate to a claim for a hostile work environment based on Acosta's disability.

42.  Additionally, Acosta alleges RMO Ribar falsely changed Acosta's CA-1 form to reflect that Acosta's injury was not work-related in retaliation for Acosta engaging in protected activities.  *Id.* ¶¶ 43–44.  Lastly, Acosta alleges RMO Ribar "retaliated against" Acosta when RMO Ribar lowered Acosta's Enterprise Performance Management Platform ("EPMP") scores for 2017 and 2018 without giving any reason or counseling.  *Id.* ¶ 46.[10]

In the Motion, Defendant first argues that Acosta does not allege how the lower performance scores or his suspension and removal from his position was the result of animus against Acosta due to his disability.  [DE 31] at 2.  Second, Defendant contends that the two derogatory comments and alleged falsified form do not rise to the level of sufficiently severe or pervasive harassment that alters the terms and conditions of employment.

As to Defendant's first argument, Defendant is correct that Acosta has failed to allege facts from which the Court can infer a connection between Acosta's lowered performance scores or his removal from his position and discrimination based on Acosta's disability.  Again, there are no allegations identifying what Acosta's disability is, when he became disabled, and when and how Defendant became aware of this disability.  For example, it is unclear if Acosta's disability stems from the (unspecified) "traumatic injury during mandatory training" he suffered "between May 23, 2018 and June 18, 2018," [DE 27] ¶ 10, or from some prior condition that led to his "100% disability rating from the VA," *see id.* ¶ 9.  Thus, it is virtually impossible for the Court to draw inferences from the chronology of the bare allegations in the Amended Complaint makes.

---

[10] The Amended Complaint does further allege that "[o]nce FAM Acosta began being harassed in the work environment, his EPMP score was lowered, he received numerous unfounded suspensions and his job performance was falsely attacked." *Id.* ¶ 47.  Yet, other than the July 2019 indefinite suspension pending investigation for use of CBD oil, the Amended Complaint provides no allegations as to any other "numerous unfounded suspensions."  Nor does it indicate how Acosta's "job performance was falsely attacked" other than through the lowering of his EPMP score.

Acosta alleges that RMO Ribar lowered Acosta's performance scores in 2017 and 2018. *Id.* ¶ 46. If Acosta's disability stems from his 2018 injury, then the lowered performance score in 2017 could not plausibly relate to Defendant's discrimination against Acosta. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We hold that, in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."). Nor would RMO Ribar's alleged lowering of Acosta's 2018 score be plausibly connected to animus regarding Acosta's disability given that RMO Ribar took the same alleged action the year before. If Acosta's disability existed prior to his 2018 injury, it is unclear why Defendant would suddenly begin discriminating against him on the basis of that disability in 2017, many years after he had been employed by Defendant. Again, even accepting as true Acosta's allegations of derogatory comments by RMO Ribar about his disability in 2018, Acosta provides no allegations from which to infer this attitude began manifesting in 2017.

Moreover, Acosta's own allegations are at odds with an inference that Acosta's disability motivated RMO Ribar's actions. Acosta alleges in the Amended Complaint that both the lowered 2018 score and RMO Ribar's alleged falsification of Acosta's CA-1 form to reflect that Acosta's 2018 injury was not work-related, was retaliation "for his protected activities." [DE 27] ¶¶ 43–44, 46. Thus, Acosta's allegations are insufficient to infer any connection between the lowered performance scores and his disability.

The Amended Complaint similarly fails to connect Acosta's 2019 suspension and removal with his disability. The only allegations suggesting anyone had animus towards Acosta's disability concern RMO Ribar. Yet there are no facts from which the Court can conclude that RMO Ribar was in a position to cause or influence Acosta's suspension. Moreover, particularly in light of the

13

lack of information about the nature and timing of the disability, there is no temporal connection between the unspecified disability and the suspension.

As to Defendant's second argument, Defendant is correct that the allegations regarding RMO Ribar's comments and other actions are insufficient to demonstrate "severe and pervasive" harassment.  Acosta only uses vague and conclusory descriptions alleging that RMO Ribar made "derogatory comments" to Acosta when Acosta "used his disabled parking permit to park in a disabled parking spot" and that RMO Ribar made comments "about using 'taxpayer money'" to allow "Acosta to work with reasonable accommodations instead of working without a reasonable accommodation."  *Id.* ¶¶ 41–42.  These allegations fail to actually describe what the comments were.  Absent such detail, it is impossible for the Court to determine whether the alleged conduct can meet the standard of objective severity, including, for example, determining "whether it is physically threatening or humiliating, or a mere offensive utterance and whether it unreasonably interferes with an employee's work performance."  *See Harris*, 510 U.S. at 23.  Such bare allegations "are not 'enough to raise a right to relief above the speculative level.'"  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555); *see also Johnson v. Sunshine Rest. Partners, LLC*, No. 09-21556-CIV, 2010 WL 11504502, *2–3 (S.D. Fla. Mar. 8, 2010) (dismissing plaintiff's hostile work environment claim when complaint only contained universally vague and conclusory factual allegations).[11]

---

[11] Acosta also alleges pure recitals of a hostile work environment claim.  For example, Acosta alleges that:

> The harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment as the harassment took place with regular consistency, the harassment involved numerous activities that could cause FAM Acosta to lose his position, the harassment was humiliating and it regularly inhibited FAM Acosta from being able to complete his job duties.

Moreover, even if Acosta's allegations rose to the level above speculation as to severity, his allegations hardly show conduct that is "pervasive."  Acosta has only alleged two[12] instances where RMO Ribar made "derogatory comments."  "Although no magic number exists to enable a plaintiff to establish the harassment necessary to make out a hostile-work-environment claim, it is the 'repeated incidents of [ ] harassment that continue despite the employee's objections [that] are indicative of a hostile work environment.'"  *Perry v. Rogers*, 627 F. App'x 823, 841 (11th Cir. 2015) (quoting *Miller*, 277 F.3d at 1276) (alterations in original).  Merely alleging that RMO Ribar made two derogatory comments in 2018 without stating what the comments were is insufficient to allege that Acosta endured harassment that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (citation omitted).  Nor does adding in the allegation that RMO Ribar falsified Acosta's CA-1 form, resulting in a dispute over worker's compensation benefits and the loss of some pay, to two comments in the same time period plausibly make the alleged conduct "severe and pervasive."

Because Acosta has not sufficiently alleged harassment plausibly connected to his disability that was so severe and pervasive as to alter the term and conditions of employment and

---

[DE 27] at ¶ 49.  A formulaic recitation of the elements will not survive a motion to dismiss, and the Court need not accept vague and conclusory allegations as true.  *See Twombly*, 550 U.S. at 555.

[12] Again, the Amended Complaint fails to allege the frequency of the of alleged derogatory comments, despite the District Judge's prior order highlighting that such allegations were necessary.

create a discriminatorily abusive working environment, his hostile work environment claim should be dismissed.

### C. Count III: Retaliatory Hostile Work Environment

Acosta has not adequately pled a retaliatory hostile work environment claim under Title VII's retaliation provision. In order to state such a claim, a plaintiff must allege that (1) he engaged in protected activity, (2) a causal connection existed between the protected activity and the complained of conduct; and (3) the conduct complained of might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836 (11th Cir. 2021); *Ahern v. Delta Air Lines, Inc.*, 609 F. Supp. 3d 1314, 1333 (S.D. Fla. 2022).[13]

Here, Acosta's allegations in support of his claim for retaliatory hostile work environment in Count III are almost verbatim the same facts alleged in his hostile work environment claim in Count II. The difference between the allegations in the two claims is that, in the hostile work environment claim, Acosta alleges the acts creating the hostile work environment were motivated by his disability, whereas the same acts allegedly creating retaliatory hostile work environment were due to his participation in his protected activities.

As discussed earlier, Acosta has not alleged facts that could plausibly establish a causal connection existed between the protected activity and the complained of conduct. Again, the protected activity for which Acosta alleges Defendant was retaliating is Acosta's participation in

---

[13] In Acosta's retaliatory hostile work environment claim section of his Amended Complaint, he alleges "[t]he following elements based on" *Palmer v. McDonald*, 624 F. App'x 699 (11th Cir. 2015). [DE 27] at ¶ 52. However, for the elements of retaliatory hostile work environment, *Palmer* relied on *Gowski v. Peake*, 682 F.3d 1299 (11th Cir.2012). The Eleventh Circuit has explicitly recognized that the standard in *Gowski* conflicts with, and thus is abrogated by, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020); *Babb*, 992 F.3d at 1209.

his 2011 MSPB case and his testimony in MacLean's 2019 MSPB case.  Regarding Acosta's allegations that RMO Ribar made "derogatory comments" towards him in 2018, lowered his EPMP scores in 2017 and 2018, and falsified his CA-1 form in 2018 for participating in his MSPB case in 2011, there are no allegations from which one could plausibly infer that these acts were connected to Acosta's 2011 MSPB case.  Indeed, what little description of RMO Ribar's "derogatory comments" Acosta provides suggests that the comments potentially concerned Acosta's disability and (unspecified) request for reasonable accommodation but show nothing regarding his MSPB participation.  Moreover, all of these actions occurred in 2017 and 2018, six and seven years after Acosta's MSPB case (and before Acosta testified in MacLean's MSPB case).  Thus, these events are too far removed from the date of Acosta's participation in his 2011 protected activity to plausibly allege a causal connection (and obviously could not be plausibly connected to activity that had not occurred yet).

For the reasons previously discussed, Acosta also has not adequately pled facts to suggest a causal connection between his MSPB activity and Defendant's decision to suspend him and ultimately remove him from his position.  Defendant suspended Acosta from his position in 2019, due to an investigation into his use of CBD oil.  *Id.* ¶ 53.  Acosta participated in his MSPB case in 2011.  Eight years is too far removed to establish a causal connection between the protected activity and complained of activity.  *See Thomas*, 506 F.3d at 1364.  While this suspension and removal was closer in time to his testimony in MacLean's MSPB case, for the reasons discussed earlier, it was still too remote to suggest a causal connection.  Therefore, Acosta's retaliatory hostile work environment claim should be dismissed.

### D. Count IV: American with Disabilities Act Retaliation

As a threshold matter, Acosta cannot bring an American with Disabilities Act ("ADA") retaliatory claim.  This is because the ADA does not apply to federal employers.  *See* 42 U.S.C. § 12111(5)(B).  Instead, the Rehabilitation Act of 1973, 29 U.S.C. § 701 et. seq., "prohibits federal agencies from discriminating in employment against individuals with disabilities."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).  Despite this pleading mix-up, I will construe Acosta's claim as if it were brought under the appropriate statute because "[t]he standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act."  *Id.*  As a result, "cases involving the ADA are precedent for those involving the Rehabilitation Act."  *Id.*[14]

Even construing Acosta's ADA claim as a claim under the Rehabilitation Act, Acosta has failed to sufficiently allege facts that would establish that Defendant retaliated against him for seeking a reasonable accommodation.  To establish a retaliation claim, a plaintiff must show: "(1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action."  *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

Here, Acosta alleges that he "requested a reasonable accommodation for his disability in good faith and [in] a reasonable belief that he was entitled to the accommodation."  [DE 27] ¶ 69.  Acosta's "reasonable accommodation was treatment for his injury via use of CBD oil for pain."  *Id.* ¶ 70.  Acosta further alleges that his "reasonable accommodation was denied for no reason," that RMO Ribar falsified his CA-1 form so that Acosta "would not receive his continuity of pay

---

[14] Additionally, taking this approach accomplishes the goal of Federal Rule of Procedure 8 to construe pleadings "so as to do justice."  Fed. R. Civ. P. 8(e).

for his work-related injury," and he suffered "materially adverse employment action when he was indefinitely suspended without pay and his security clearance was removed." *Id.* ¶¶ 71–72, 76.[15]

Acosta's allegations are too vague to sustain his claim. Acosta does not allege when he made his request for reasonable accommodation, to whom he made the request, or when or how it was denied. "A plaintiff cannot carry his burden to prove a retaliation claim if his argument is too vague to even analyze." *Fails*, 2023 WL 5666438, at *10. Without alleging any of these facts, Acosta cannot plausibly establish a causal link between the protected expression and the adverse action. Within his general factual allegations, Acosta alleges that his physician prescribed CBD oil in February 2019. [DE 27] at ¶ 11. However, neither in his general factual allegations nor in this specific count does Acosta allege when Defendant requested his accommodation, when it was denied, who denied it, or when Defendant indefinitely suspended him and removed his security clearance.[16] Thus, Acosta's ADA (Rehabilitation Act) retaliation claim should be dismissed.

### E. Count V: Disparate Treatment

Count V should not be dismissed. Defendant's entire argument within its Motion pertaining to this count is that "while disparate treatment is a required element to create a prima

---

[15] To the extent Acosta is trying to assert a claim based on Defendant's denial of his accommodation request, such a denial cannot constitute an adverse employment action for purposes of a retaliation claim based on that accommodation request. *See Narvaez v. Fla. Health Scis. Ctr.*, No. 8:23-CV-2195-TPB-NHA, 2024 WL 167260, at *3 (M.D. Fla. Jan. 16, 2024); *Fails v. Bd. of Trustees Univ. of W. Fla.*, No. 3:22CV7026-TKW-HTC, 2023 WL 5666438, at *10 (N.D. Fla. Sept. 1, 2023).

[16] Acosta sporadically provides more specific factual allegations within other counts of his Amended Complaint, but those specific allegations cannot form the basis of this claim because they were not pled in the general factual allegations or within this specific count. *See Norris v. Honeywell Int'l, Inc.*, No. 8:22-CV-1675-CEH-TGW, 2023 WL 6256183, at *14 (M.D. Fla. Sept. 26, 2023) ("[O]nly allegations that are included or incorporated into Count I's allegations can be considered in determining whether it is sufficiently pleaded."); *Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288, 1300 n.7 (M.D. Fla. 2018) (refusing to apply factual allegations to a different count when those factual allegations were only alleged in one specific count).

facie case of discrimination under Title VII, it is not a separate cause of action that is cognizable under [f]ederal law." [DE 31] at 13–14. This is not true. While Defendant may be playing semantics, disparate treatment is one of the two theories of intentional discrimination under Title VII. *See, e.g.*, *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) ("There are two theories of intentional discrimination under Title VII: disparate treatment and pattern or practice discrimination."); *Fuller v. Edwin B. Stimpson Co. Inc.*, 598 F. App'x 652, 653 (11th Cir. 2015) ("In evaluating disparate treatment claims . . . we use the framework of [*McDonnell Douglas*]."); *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272–74 (11th Cir. 2021) (evaluating the lower court's dismissal of plaintiff's disparate treatment claim). And while Count V is titled "disparate treatment," it addresses (albeit in rather sparse fashion) the elements of a case of intentional discrimination under a theory of disparate treatment.

To establish disparate treatment on the basis of a protected status, through the *McDonnell Douglas* framework, a plaintiff must show that:

> (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was subjected to adverse employment action; and (4) in subjecting the plaintiff to adverse employment action, the employer treated the plaintiff less favorably than a similarly situated individual outside the plaintiff's protected class.

*Bailey*, 992 F.3d at 1273 n.1. Defendant's Motion does not address the sufficiency of the allegations in Count V in comparison to the required elements; rather it appears to take aim solely at the title of the count. As a result, Defendant fails to carry its burden to show that dismissal is warranted. Although Plaintiff has arguably failed to address the shortcomings the District Judge identified in dismissing the original complaint, because Defendant's only argument in its Motion regarding this count is that "disparate treatment" is not a separate cause of action cognizable under federal law, I will not *sua sponte* analyze the sufficiency of the allegations or any other argument Defendant did not make. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)

("[T]he onus is upon the parties to formulate arguments . . . ."). Consequently, Count V should not be dismissed.

<u>**CONCLUSION**</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 31] be **GRANTED-IN-PART and DENIED-IN-PART**. As to Counts I–IV, the dismissal should be with prejudice. Acosta has already had one chance to amend his Complaint, and his Amended Complaint still suffers from the very same deficiencies that the Court pointed out in its earlier order dismissing the original complaint. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 931 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so."). Moreover, Acosta has not sought leave to amend his Amended Complaint. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice. *See* 28 U.S.C. § 636(b)(1);

*Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989);

11th Cir. R. 3-1.

      **DONE AND SUBMITTED** in Fort Lauderdale, Florida this 5th day of March 2024.

Jared M. Strauss
United States Magistrate Judge

22